

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00109-CR

DONALD LEWIS                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Donald Lewis appeals his conviction for driving while intoxicated (DWI). Lewis raises four issues on appeal regarding voir dire, the constitutionality of the DWI statute, and the jury instructions. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Several Fort Worth police officers worked an off-duty assignment directing traffic at Texas Motor Speedway one race day in April 2011. At around 10:30 that night, there was a lot of pedestrian and vehicular traffic leaving the speedway. Officer Jennifer Bell was notified by radio to be on the lookout for a golf cart with three people in it; the driver was driving in the grass and in and out of the vehicles that were lined up to leave the speedway, and the golf cart had almost hit a pedestrian. She soon saw the golf cart coming towards her with no lights on weaving around vehicles. The golf cart almost hit Officer Bell, and she grabbed the driver's arm and told him, "[S]top, police, stop now." The driver replied that he did not have to stop and continued driving. Officer Bell was wearing her police uniform with a fluorescent yellow safety vest that said "Police" on it. She ran after the golf cart and radioed to Corporal D.J. Lusty, another off-duty officer working traffic at the speedway that night, to stop the golf cart because it had almost hit her and because the driver would not stop.

Corporal Lusty saw the golf cart coming towards him and told the driver, "[S]top, police." The golf cart did not stop, and Corporal Lusty stepped out of the way as the right side of the golf cart struck his arm. Corporal Lusty ran alongside the driver's side of the golf cart and told the driver to pull over. Corporal Lusty grabbed the steering wheel and attempted to steer the golf cart toward a fence to slow it down. The driver asked, "[W]hat's the problem, officer?" Corporal Lusty replied that the golf cart had hit him and had almost hit another officer. Corporal

2

Lusty grabbed the back of the driver's shirt, causing it to tear. Corporal Lusty then jumped on the back of the golf cart and continued to tell the driver to stop. With the help of a speedway employee on a four-wheeler, the officer stopped the golf cart. The driver, identified as Lewis, was handcuffed.

Officer Carlene Bounds conducted the DWI investigation after Lewis was arrested. She noticed that Lewis had an odor of alcoholic beverage on him, that his speech was slurred, and that his eyes were bloodshot and watery. Lewis admitted that he had been drinking alcoholic beverages. He failed field sobriety tests and was taken to the police station, where he consented to a breath test. The results showed that Lewis had an alcohol concentration of 0.152 and 0.135 grams of alcohol per 210 liters of breath. Retrograde extrapolation evidence presented at trial showed that Lewis would have had an alcohol concentration of between 0.14 and 0.16 grams of alcohol per 210 liters of breath at 10:30 that night, when Corporal Lusty stopped him.

Lewis was charged with DWI and misdemeanor evading arrest. The jury found Lewis guilty of DWI and found him not guilty of evading arrest. The trial court sentenced Lewis to 120 days in jail and a $500 fine, suspended imposition of the jail sentence, and placed Lewis on community supervision for fifteen months.

### III. LIMITATION OF DEFENSE COUNSEL'S QUESTIONING IN VOIR DIRE

In his first issue, Lewis argues that the trial court abused its discretion by not allowing defense counsel to discuss with the jury panel during voir dire the

3

difference between misdemeanor evading arrest (which does not require the use of a motor vehicle) and felony evading arrest (which, in this case, would require the use of a motor vehicle).[2]  *See* Tex. Penal Code Ann. § 38.04(a), (b).  The State objected that Lewis had not been charged with felony evading arrest so that offense was not a proper subject of voir dire.  Defense counsel responded that felony evading arrest (and the definition of a motor vehicle as it applies to felony evading arrest) were relevant to both the law and the facts:

> We believe as the trial continues that there is going to be testimony and evidence that comes out that Mr. Lewis was arrested for felony evading.  We'd like to educate the jury on the definition of a motor vehicle and what makes it felony evading rather than just a normal evading case, and because of that, we want to use the slides to educate them to those purposes.

The trial court did not allow defense counsel to present the felony evading arrest definition of a motor vehicle to the panel.

Lewis argues that defense counsel should have been allowed to show the "absurdity" between charging Lewis with DWI (which requires the use of a motor vehicle) and not charging him with felony evading arrest (which also requires the use of a motor vehicle) but instead charging him with misdemeanor evading arrest (which does not require the use of a motor vehicle); he argues that the issue was "tied to the credibility of the officers and the good faith of the

---

[2]Specifically, defense counsel was prohibited from showing the jury panel a PowerPoint slide containing the definition of a motor vehicle as it applies to the felony evading arrest statute.  *See* Tex. Transp. Code Ann. § 541.201(23) (West 2011); Tex. Penal Code Ann. § 38.04(b), (c) (West Supp. 2012).

4

prosecutors." As the State points out, it has considerable discretion in deciding what charges to bring against a defendant. *See Raetzsch v. State*, 709 S.W.2d 39, 41 (Tex. App.—Corpus Christi 1986, no pet.) (citing *United States v. Goodwin*, 457 U.S. 368, 382, 102 S. Ct. 2485, 2493 (1982)). Here, the State chose to charge Lewis with misdemeanor evading arrest, a lesser-included offense of felony evading arrest. *See* Tex. Penal Code Ann. § 38.04(a), (b); *see also Powell v. State*, 206 S.W.3d 142, 143 (Tex. App.—Waco 2006, pet. ref'd) (explaining that evading arrest on foot is a lesser-included offense of evading arrest by vehicle). Because felony evading arrest was not at issue, the trial court did not abuse its discretion by precluding defense counsel from presenting to the jury panel the definition of a motor vehicle that is applicable to that offense. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002) (explaining that trial court has broad discretion over the propriety of a particular question during jury selection and that discretion will not be disturbed absent an abuse of discretion); *see also Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012) (explaining that trial court retains discretion to restrict voir dire questions that are confusing or misleading). We overrule Lewis's first issue.

### IV. THE DEFINITION OF A "MOTOR VEHICLE"

In part of his second issue, Lewis argues that the State's defining, during voir dire, a "motor vehicle" to include "anything that can put you on the road" was overbroad and misled the jury panel. Lewis did not object to this statement and,

5

consequently, did not preserve his complaint for our review.[3]  *See* Tex. R. App. P. 33.1(a)(1) (requiring a timely request, objection, or motion stating the specific grounds for the desired ruling to preserve a complaint for review); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *see also Espinosa v. State*, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("When [an] appellant complains about an improper remark by the prosecutor during voir dire, [the] appellant must object when the remark is made.").

Lewis further argues in the remainder of his second issue and in his third issue that if, in fact, the DWI statute's definition of a motor vehicle does include "skateboards and roller skates and various household conveniences," then the statute is overbroad and void for vagueness.  Lewis did not challenge the constitutionality of the statute in the trial court and has thus failed to preserve this complaint for our review.[4]  *See* Tex. R. App. P. 33.1(a)(1); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that appellant may not raise

---

[3]In voir dire, the State also read to the jury panel the correct definition of a "motor vehicle" applicable to the offense of DWI—"a device in, on, or by which a person or property is or may be transported or drawn on a highway."  *See* Tex. Penal Code Ann. § 32.34(a)(1) (West 2011) (defining motor vehicle as such), § 49.01(3) (West 2011) (applying section 32.34's definition of a motor vehicle to intoxication offense chapter).  The State then offered a horse and buggy as an example and elicited from the jury panel other examples, including a bicycle, a skateboard, a moped, a golf cart, and a tractor.  Defense counsel did not object during this exchange.

[4]To the extent that Lewis's argument could be interpreted as challenging the sufficiency of the evidence to prove the motor-vehicle element of DWI, Lewis concedes in his brief that a golf cart is a motor vehicle under penal code section 32.34(a)'s definition.

6

facial challenge to constitutionality of statute for first time on appeal); *Holmes v. State*, 380 S.W.3d 307, 308 (Tex. App.—Fort Worth 2012, pet. ref'd) ("[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial."). We overrule Lewis's second and third issues.

## V. ARTICLE 38.23 INSTRUCTION

In his fourth issue, Lewis argues that the trial court erred by refusing his request to include an article 38.23 instruction in the jury charge regarding the officers' reasonable suspicion to stop him.

Article 38.23(a) of the code of criminal procedure prohibits the admission of evidence against an accused in a criminal trial if the evidence was obtained in violation of the Texas or United States constitutions or laws. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005). The statute further provides,

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.*

If a defendant successfully raises a factual dispute over whether evidence was illegally obtained, inclusion of a properly-worded article 38.23 instruction is mandatory. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To be entitled to the submission of a jury instruction under article 38.23(a), a defendant must establish that (1) the evidence heard by the jury raises an issue

7

of fact; (2) the evidence on that fact is affirmatively contested; and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.*; *cf. Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). If there is no dispute regarding the factual basis for the challenged search or seizure, then the legality of the conduct is determined by the trial judge alone—as a question of law—and a jury instruction is inappropriate. *Madden*, 242 S.W.3d at 510. "A fact issue about whether evidence was legally obtained may be raised 'from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable.'" *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)).

Here, Lewis argues that the testimony of three witnesses—himself and the two passengers in his golf cart—contradicted Officer Bell's testimony that she yelled at Lewis to stop and that he almost struck her. One of the passengers, Georg Schmid, testified that the parking lot was chaotic and that he did not know the police were trying to stop the golf cart until Corporal Lusty jumped on the cart. When asked if he remembered a female officer telling them to stop, he replied, "I don't remember [a] female officer. I remember a female parking attendant." Schmid also testified that Lewis almost hit only "the dude that jumped in the way" and jumped on the golf cart—Corporal Lusty. Jennings, the other passenger, testified that he saw what he thought was a "parking lot attendant" tell them to stop and said something about being on the grass, but he did not know whether

8

Lewis heard the attendant. Jennings testified that he did not see Lewis hit anyone with his golf cart. Lewis himself testified that a female parking attendant stepped in front of his golf cart and that he swerved to "kind of go around her," at which point Jennings told him that she had said something to them about being on the grass. Lewis testified that he did not know she was a police officer and that she never grabbed his arm or told him to stop.

This evidence raises, *at most*, a disputed fact issue about whether Lewis knew that a police officer—Officer Bell—was trying to stop him.[5] None of the above testimony nor any other evidence in the record creates a disputed issue of fact regarding Lewis driving in and out of the grass and vehicles and almost hitting Officer Bell or Corporal Lusty—as a basis for reasonable suspicion to stop Lewis. *See Madden*, 242 S.W.3d at 513 (explaining that no disputed fact exists if, for example, officer testified that appellant "did speed" and appellant testified that he "doesn't remember or doesn't know" whether he was speeding because there is no affirmative evidence of a factual conflict). Accordingly, Lewis was not entitled to an article 38.23 jury instruction. *See Hamal v. State*, 390 S.W.3d 302, 302 (Tex. Crim. App. 2012). We overrule Lewis's fourth issue.

---

[5]The jury found Lewis not guilty of evading arrest.

## VI. Conclusion

Having overruled Lewis's four issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 18, 2013